[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15379
Non-Argument Calendar

_____

D. C. Docket No. 06-01408-CV-RWS-1

WESTERN UNION HOLDINGS, INC.,
WESTERN UNION FINANCIAL SERVICES, INC.,
INTERGRATED PAYMENT SYSTEMS, INC.,

Plaintiffs-Counter-
Defendants-Appellees,

versus

EASTERN UNION, INC.,
EU FINANCIAL SERVICES, INC.,
YOUNG CHOE,
individually and d/b/a Check Cash Plus,
EVIAN GROUP, INC.,
ERIC YOUNG,

Defendants-Counter-
Claimants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 20, 2008)**

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Eastern Union, EU Financial Services, Young Choe, Evian Group, and Eric Young appeal the summary judgment in favor of Western Union. The district court concluded that Eastern Union infringed the trademarks of Western Union. We affirm.

## I. BACKGROUND

Western Union owned a number of registered trademarks for the "WESTERN UNION" mark depicted in a yellow block font on a black background associated with money transfer and money order services. Young Choe was the owner of Check Cash Plus, a Georgia corporation that offered money transfer services and sold money orders and travelers checks. Choe entered an agency contract with Western Union that allowed Choe to sell Western Union money transfer and money order services and to use the marks owned by Western Union at four stores of Check Cash Plus. Choe agreed not to sell any other money order products or services.

Choe was registered with the Secretary of State of Georgia as the president and chief executive officer of Eastern Union, a Georgia corporation that offered money transfer services, and as holding all corporate officer positions of EU

2

Financial Services, a Georgia corporation that offered tax preparation and loan services. Choe was the registered agent for both corporations and accepted service for the corporations at the address of one of her Check Cash Plus stores. The same address was also listed with the Secretary of State as the principal office of EU Financial Services.

Five months after Choe contracted with Western Union, Eric Young filed a trademark application for the mark EASTERN UNION and listed himself as the chief executive officer of Eastern Union. Young stated on the application that the mark was associated with the issuance of travelers checks and services for payroll accounting and tax preparation. Check Cash Plus later advertised money orders, money transfers, and travelers checks under the name and mark EASTERN UNION. At one Check Cash Plus store and in a Check Cash Plus brochure, the EASTERN UNION mark was depicted in a yellow block font on a black background. When it learned that Check Cash Plus was selling products of Eastern Union, Western Union notified Choe that the sales violated the agency contract and demanded that Choe cease use of the EASTERN UNION marks and black and yellow trade dress.

When Choe did not respond to its demand, Western Union terminated the agency agreement and filed a complaint that Choe, Eastern Union, and Young had

committed unfair trade practices in violation of the Lanham Act and Georgia law. 15 U.S.C. §§ 1114, 1125(a), 1125(c); Ga. Code Ann. §§ 10-1-371–73, 10-1-451(b), 23-2-55. Western Union alleged that the defendants had committed trademark and trade dress infringement by using the EASTERN UNION mark in combination with a yellow and black trade dress similar to that used by Western Union. Western Union sought to enjoin the defendants from using "any name, designation or mark containing the phrase EASTERN UNION or any other mark, word, designation, trade dress or name similar to the WESTERN UNION" marks.

After a hearing, the district court entered a preliminary injunction that the defendants cease using the EASTERN UNION mark. The district court later held the defendants in contempt for failing to comply with the injunction but declined to impose sanctions for their use of the marks EU and E.U. The district court amended the preliminary injunction to bar defendants from using the marks EU and E.U. The district court later held the defendants in contempt for violating the amended preliminary injunction.

Western Union filed a motion for summary judgment. The district court denied the summary judgment for trade dress infringement, but granted summary judgment for trademark infringement. The district court concluded that Eastern Union used a mark "decidedly similar" to the mark owned by Western Union and

4

there was a substantial likelihood of consumer confusion. The district court entered a permanent injunction prohibiting the use of the EASTERN UNION, EU, and E.U. marks.

## II. STANDARDS OF REVIEW

We review summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. Alliance Metals, Inc. v. Hinely Industries, Inc., 222 F.3d 895, 897 (11th Cir. 2000). Summary judgment should be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). We review the exclusion of an affidavit of an undisclosed expert for abuse of discretion. Cooper v. Southern Co., 390 F.3d 695, 728 (11th Cir. 2004).

## III. DISCUSSION

The defendants, to whom we will refer collectively as Eastern Union, argue that Western Union was not entitled to summary judgment for trademark infringement. Eastern Union argues that the district court erroneously applied the same legal standard as it used to evaluate the request for the preliminary injunction, overlooked genuine issues of material fact, and erroneously excluded an affidavit of an undisclosed expert. We disagree.

Western Union had to establish that its mark had priority and the mark used

5

by Eastern Union was confusingly similar to the mark owned by Western Union so that it "created a likelihood of confusion among consumers as to the origin of goods sold." Alliance, 222 F.3d at 906. Eastern Union does not dispute the priority of Western Union to the trademark, but Eastern Union denies that there was a likelihood that consumers would confuse the WESTERN UNION and EASTERN UNION marks. We agree with the district court that there was no genuine issue of material fact regarding the likelihood of confusion between the WESTERN UNION and EASTERN UNION marks.

To resolve this controversy, the district court assessed seven factors: the strength of the mark; the similarity of the sales methods of the parties; the similarity of the advertising methods used by the parties; the similarity of the two marks; the similarity of the products and services offered by the parties; the defendants' intent when using the mark; and actual confusion between the marks. See Alliance, 222 F.3d at 907. Eastern Union offered no evidence to create an issue of fact as to the first three factors. The evidence established that the Western Union mark was arbitrary and deserved strong protection; both parties marketed their products through small retail outlets targeted to reach the same group of consumers; and the parties employed the same advertising mediums. The district court also concluded that there was no genuine issue of material fact regarding the

6

remaining factors. The marks WESTERN UNION and EASTERN UNION were patently similar in "appearance, sound and meaning . . . as well as the manner in which they [were] displayed." E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1531 (11th Cir. 1985); see, e.g., Frehling Enters., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1337 (11th Cir. 1999). The parties also advertised virtually identical money order and money transfer services that customers could easily attribute to one source. See Frehling, 192 F.3d at 1338; Remy Martin, 756 F.2d at 1530.

The undisputed familiarity of Eastern Union with the WESTERN UNION mark and its well-known affiliation with money transfer services, imitation of the WESTERN UNION mark, and repeated refusals to discontinue use of a mimetic mark established that Eastern Union intended to capitalize on the reputation and infringe on the market created by Western Union. See Frehling, 192 F.3d at 1340 ("If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity."). Although Western Union did not present evidence of actual customer confusion, the district court correctly concluded that proof of actual confusion was not required when the overwhelming evidence regarding the remaining factors supported a judgment in

7

favor of Western Union.  See Montgomery v. Noga, 168 F.3d 1282, 1302 (11th Cir. 1999) (refusing to reverse a finding of a likelihood of confusion between marks "based merely on the absence of evidence of actual confusion"); see also Frehling, 192 F.3d at 1340 (evidence of actual confusion "is not a prerequisite, and thus it is up to individual courts to assess this factor in light of the particular facts of each case").  The district court did not err.

The district court also did not abuse its discretion when it excluded the affidavit of Jeffrey Shusterman.  Eastern Union failed to disclose Shusterman as an expert and failed to provide an expert report during the discovery period as required by Federal Rule of Civil Procedure 26(a)(2) and Local Rule 26.2C. "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, ... compliance with Rule 26 is not merely aspirational."  Cooper, 390 F.3d at 728 (citation omitted).

## IV. CONCLUSION

The summary judgment in favor of Western Union is **AFFIRMED**.